## PARTON ET AL. *v.* YATES ET AL.

FRAUD.—*Consideration.*—The question of fraudulent intent in the conveyance of property is a question of fact, and want of consideration for the convey-ance alone will not establish such intent, as against creditors.

SAME.—*Deed to Vest Legal Title in Equitable Owner.*—Where property has been conveyed to a husband, the consideration paid therefor being the prop-erty of his wife, and a note of the husband has been given for the remaining purchase-money, being one-third of the entire consideration, said note being secured by mortgage on the property conveyed, it is not fraudulent for the hus-band and wife, such note being still unpaid, to convey the property to a third person, and for such person to reconvey to the wife, in order to vest the title in her, she never having consented to the title's being vested in her husband.

APPEAL from the Henry Circuit Court.

WORDEN, J.—This was an action by the appellees against the appellants to set aside conveyances of certain real estate made by Charles Parton to William Parton, and by William Parton and his wife to Jennetta Parton.

The plaintiffs were judgment creditors of Charles Parton, having procured judgments before a justice of the peace and filed transcripts thereof in the proper clerk's office.

It is alleged that the conveyances were made without any consideration, and with the fraudulent purpose to cheat, hinder, and delay the plaintiffs and other creditors, and that the parties thereto combined and confederated together for that purpose.

Answer of general denial, trial by jury, verdict and judg-ment for plaintiffs, a new trial being refused to defendants, and exception.

The facts in the case, so far as the conveyances in ques-tion are concerned, are as follows:

Jennetta Parton, who is the wife of said Charles, was the daughter and one of the heirs of Joseph Foster, deceased. She inherited from her said father about eighteen acres of land as her share of the estate. Partition seems to have been made by the heirs of Joseph Foster amongst them-selves, and on the 22d of September, 1866, the other heirs of said Joseph executed a conveyance to the said Charles

and Jennetta of eighteen acres of the land.   Why the name of Charles was inserted as a grantee in this deed does not appear.

Afterward, in February, 1871, said Jennetta sold the eighteen acres to her brother, Elijah Foster, for one thousand six hundred dollars, and we infer a conveyance was made by her and her husband accordingly.   For the land thus purchased by Elijah Foster he paid a debt owed by Charles Parton of one hundred dollars, and gave two notes for the residue, one for one thousand dollars, and one for five hundred dollars.   These notes were made payable to Charles Parton.

Before the conveyance to Elijah Foster, Jennetta had in view the land in controversy in this suit, and had ascertained for what it could be purchased.   It consists of two separate parcels, one of five acres, and one of twenty-five.   The smaller piece was owned by Mary Kaoge, and the larger by Eliza Griffin.   Jennetta sent her husband, Charles, as her agent, to purchase them, after the sale of the other land to Elijah Foster.   The purchase was made, the smaller piece for five hundred dollars, and the larger for one thousand five hundred dollars.   The smaller piece was paid for by transferring to Mary Kaoge the five-hundred-dollar note executed by Elijah Foster, and nine hundred dollars was paid to Eliza Griffin out of the proceeds of the other note given by Elijah Foster, leaving six hundred dollars still due to Griffin.   For this sum, Charles Parton executed his notes to Griffin, and he and Jennetta executed a mortgage on the premises to secure the payment thereof.   This mortgage remains wholly unpaid.   Charles Parton has paid nothing upon the premises, nor has he invested anything therein in any way.

The deeds from Mary Kaoge and Eliza Griffin, which were executed March 9th, 1871, convey the land nominally to Charles Parton.   Jennetta was not present when they were executed, and never consented that they should be made to him.

Upon ascertaining that the deeds were made to her hus-

band, Jennetta went to the officer before whom they were acknowledged and told him she was not satisfied with the deeds to her husband, and wanted them changed so that the property should be in her name. Charles also applied to the officer for the same purpose. The officer advised them that the only way to effect the purpose would be to convey to a third person, and he could convey to Jennetta. Charles accordingly conveyed the property to William Parton, and the latter, together with his wife, conveyed to Jennetta. These latter conveyances were without consideration, and were resorted to for the mere purpose of vesting the title in Jennetta.

Charles Parton seemed to have no other property out of which the plaintiffs' debts could be collected. These are believed to be the material facts, and about them there is no conflict, as we can perceive, in the evidence.

We are of opinion that the verdict and judgment should not be sustained.

The twenty-first section of the act for the prevention of frauds and perjuries, etc., provides, that "the question of fraudulent intent, in all cases arising under the provisions of this act, shall be deemed a question of fact, nor shall any conveyance or charge be adjudged fraudulent, as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration."

Charles Parton has invested nothing in the property in controversy. It has been paid for solely, so far as payment has been made, with the proceeds of the property which his wife Jennetta inherited from her father. The simple fact that the notes given by Elijah Foster for the property purchased by him were made payable to Charles was not sufficient to establish the proposition that Jennetta intended to give them, or the proceeds thereof, to him. Indeed, we find nothing in the case that sufficiently establishes such intention on her part.

Without stopping to inquire as to the legal effect of the deed from the other heirs of Joseph Foster to Charles and

Jennetta, or the deeds from Griffin and Kaoge to Charles, or how far any trust attaches to them in favor of Jennetta, we are of opinion that the imputed fraudulent intent is not sufficiently established, and that a new trial should have been granted. The want of a valuable consideration passing from William to Charles Parton, or from Jennetta to William and his wife, as we have seen, is not of itself sufficient to establish the fraud. The proceeds of Jennetta's property being all that was invested in that in controversy, it could scarcely be fraudulent on her part to take such steps as were necessary to secure the legal title. There must have been a fraudulent intent on her part, as well as on the part of her husband, in order that the conveyance be set aside. *Doe* v. *Horn*, 1 Ind. 363.

Indeed, as Charles had invested nothing in the property, it having been paid for, so far as payment had been made, with the proceeds of his wife's inheritance, a better motive than the fraudulent purpose of placing it beyond the reach of his creditors might well be imputed to him in securing the legal title to her. The question of fraudulent intent is one of fact, and however reluctant we may be to differ with the jury and the court below upon such a question, we must act upon our own convictions, and not theirs. Substantial justice requires, as we think, that a new trial be granted.

The judgment below is reversed, with costs, and the cause remanded for a new trial.

*J. Brown* and *R. L. Polk*, for appellants.

*M. E. Forkner* and *E. H. Bundy*, for appellees.