## SHERMAN ET AL. *v.* HOGLAND.

HUSBAND AND WIFE.—*Alienation of Real Estate.—Fraudulent Conveyance.*— A conveyance of his real estate may be made by a husband, to his wife, either by a deed therefor, directly to her, or, indirectly, through a third person, and will be upheld against all, except creditors sought to be defrauded.

SAME.—*Other Property Must First be Exhausted.*—A voluntary, fraudulent conveyance of his real estate, by a debtor, to defraud his creditors, can not be attacked by them until they have first exhausted all his other property subject to execution.

SAME.—*Action to Set Aside Fraudulent Conveyance.—Pleading.—Evidence.*— In an action by a creditor, to set aside a conveyance of the real estate of his debtor and to subject the same to execution, for the alleged reason that such conveyance was made by said debtor and received by his grantee, without consideration and to cheat and defraud his creditors, it must be alleged in the complaint and proved on the trial, not only that such debtor had no property subject to execution at the commencement

of such suit, but, that, at the time such fraudulent conveyance was executed, he had not sufficient other property subject to execution, to satisfy all his debts.

SAME.—The fact that a debtor voluntarily conveys away his real estate, without consideration, and for the purpose of thereby defrauding his creditors, gives to the latter no right of action to attack such conveyance, unless at the time it was executed he had not sufficient other property, subject to execution, to satisfy all his debts.

From the Carroll Circuit Court.

*B. B. Daily* and *J. A. Sims*, for appellants.
*L. E. McReynolds* and *C. R. Pollard*, for appellee.

NIBLACK, J.—Hogland, the appellee, who was a judgment creditor of Mervin Sherman, brought suit against the appellants, in the court below, to set aside certain conveyances and to subject the real estate therein described to the payment of his judgment. The substantial part of the complaint is as follows:

"That on or about the 28th day of December, 1868, the said defendant Mervin Sherman became and was indebted to the plaintiff, Alexander Hogland, in a large sum, to wit, the sum of two hundred and ten dollars, on account of certain damages which the plaintiff had suffered by reason of a breach, by said Mervin Sherman, of a contract made and entered into between him and the plaintiff, for the conveyance of certain real estate from the defendant, to the plaintiff, the full contract price of which said real estate had been paid by the plaintiff, to said defendant Sherman, which conveyance of said real estate, as agreed upon as aforesaid, the said Mervin Sherman afterwards failed and refused to make, although he had received and accepted from the plaintiff the full amount of the purchase-money for the same. That afterwards, to wit, on the 17th day of December, 1870, the said plaintiff filed his complaint in the circuit court of Carroll county, Indiana, against the said defendant Mervin Sherman, to compel a specific performance of the contract so made as aforesaid, as appears by the proceedings in said cause on

file in the clerk's office of said county; and that, on the 24th day of October, 1873, the plaintiff recovered, against the defendant Mervin Sherman a judgment in said cause, in said Carroll circuit court, for the sum of two hundred and ten dollars and costs of suit, a copy of which judgment is filed herewith, marked 'Exhibit A,' and made a part of this complaint; and plaintiff avers that at the time of the commencement of said suit, by the plaintiff, against said defendant Mervin Sherman, said Sherman was the owner in fee, by purchase with his own means, from one James Justice and others, about the year 1856, of a certain tract of land in Carroll county, in the State of Indiana, and described as follows, to wit, the north half of the south-east quarter of section two, in township number twenty-five, north, of range one, west, containing eighty acres; the same being the tract out of which the defendant Mervin Sherman had agreed to convey two acres to the plaintiff, in pursuance of the terms of the contract heretofore referred to in this complaint. And the plaintiff avers and charges, that, on the 13th day of March, 1872, and during the pendency of the said suit by the plaintiff, against the defendant Mervin Sherman, the said Mervin Sherman, without any consideration, fraudulently and with the intent to cheat, hinder, delay and defraud the said plaintiff in the collection of any judgment which the said plaintiff might recover against him, conveyed, by deed, the tract of land above described, to one Frederick F. Nipple, who was then and there notoriously insolvent, and who, combining and conspiring with said defendant Mervin Sherman, to cheat and defraud the plaintiff as above charged, so received said conveyance or deed, a copy of which said deed is filed herewith, marked 'Exhibit B,' and made a part of this complaint. And the plaintiff avers and charges, that, immediately afterwards and on the same day, to wit, the 13th day of March, 1872, the said Frederick F. Nipple, without any consideration whatever, and for the purpose of aiding the said Mervin

Sherman in cheating and defrauding the plaintiff as aforesaid, conveyed, by deed, the same land above described to the said defendant, Rebecca Sherman, the wife of the said Mervin Sherman, who thus knowingly and fraudulently received and accepted the said deed of conveyance, with the fraudulent intent to aid and assist her said husband, Mervin Sherman, to cheat and defraud the plaintiff out of the collection of any judgment he might recover against the said defendant Mervin Sherman a copy of which deed is filed herewith, marked 'Exhibit C,' and made a part of this complaint. And the plaintiff avers that defendant Rebecca Sherman claims to own said real estate by virtue of said deed. And the plaintiff further avers and charges, that, although the said deeds each express on their face to have been executed for a valuable consideration, viz., the sum of twenty-eight hundred dollars, yet, the same were, in truth and in fact, executed without any valuable consideration, but with the sole view to cheat, hinder, delay and defraud the plaintiff in the collection of said judgment. And the plaintiff further charges, that, notwithstanding the fact that the defendant Mervin Sherman has conveyed said real estate, he has, ever since the execution of said pretended conveyance, held and still holds complete possession, and enjoyed and still enjoys the occupation, of said premises, and exercised ownership over the same. And the plaintiff further avers, that, on the 18th day of July, 1874, the plaintiff caused an execution to be issued on his judgment, so obtained, against the defendant Mervin Sherman, as aforesaid, and directed to the sheriff of Carroll county, Indiana, which said execution was afterwards, by said sheriff, to wit, on the 30th day of July, 1874, returned, endorsed thereon, 'No property found whereon to make levy or sale,' a copy of which said execution is filed herewith, marked 'Exhibit D,' and made a part of this complaint. And the plaintiff further avers and charges, that there is now due and owing him on said judgment, the sum of two hundred and ten dollars,

and costs, and interest on said judgment from the date of the rendition of the same, and the said defendant Mervin Sherman has no other property of any kind, subject to sale on execution, out of which the plaintiff can collect his said judgment, interest and costs or any part thereof."

The complaint then concludes with a prayer that the conveyances from the said Mervin Sherman to the said Frederick F. Nipple, and from the said Frederick F. Nipple to the said Rebecca Sherman, be annulled and set aside, and that the lands described therein be decreed to be subject to sale for the payment of the plaintiff's judgment, interest and costs, and for general relief.

The appellants demurred jointly to the complaint, alleging that it did not state facts sufficient to constitute a cause of action against them. The said Frederick F. Nipple and the said Rebecca Sherman, each, also demurred separately to said complaint, alleging each the same grounds of objection.

These demurrers were overruled and exceptions were reserved by the appellants.

An issue was then formed, and the cause was tried by a jury. There was a verdict for the appellee, and a judgment thereon in substantial accordance with the prayer of the complaint.

The appellants, in their assignment of errors on the record, complain of the action of the court in overruling the demurrers to the complaint, and that raises the question of the sufficiency of the complaint, which we will first consider.

The objection urged to the complaint is, that it does not allege that, at the time Mervin Sherman caused the land therein described to be conveyed to his wife, he did not have left sufficient other property, subject to execution, to pay all his debts, and that for the want of such an allegation, it is fatally defective.

The precise point raised by this objection, has, we believe, never been decided by this court as a separate

and independent legal proposition, but we think enough has been settled, in numerous cases having a direct bearing upon it, to relieve us of any serious difficulty in the solution of it.

In the case of *Brookbank* v. *Kennard*, 41 Ind. 339, it was held, that " a conveyance of real estate may be made, directly, by a husband, to his wife, without the intervention of trustees, and such conveyance will be upheld unless the rights of creditors are injuriously affected thereby."

The same rule necessarily applies with equal if not greater force where the conveyance is made to the wife, indirectly, through the intervention of some third person. Conveyances from the husband to the wife, indirectly, through trustees or third persons, have been so long upheld by the court that we need not cite authorities on that point.

In *Baugh* v. *Boles*, 35 Ind. 524, it is said, " ' a man thus indebted may undoubtedly make a voluntary conveyance * * * that will be valid, as such a conveyance should not be attacked by creditors till after his other property is exhausted, and it proving sufficient for the payment of his debts, the voluntary conveyance should stand.' "

In *Sims* v. *Rickets*, 35 Ind. 181, it was further held, that " in consequence of the absolute power which a man possesses over his own property, he may make any disposition of it which does not interfere with the existing rights of others."

In *Ewing* v. *Patterson*, 35 Ind. 326, this court, in deciding what is necessary to enable a judgment creditor to set aside a conveyance alleged to have been fraudulently made by the judgment debtor to his wife, says, " it is necessary to allege in the complaint, and to prove on the trial, that the judgment debtor does not possess other property subject to sale upon execution for the payment of the judgment." The same rule is also laid down, substantially, in the case of *Baugh* v. *Boles*, *supra*.

In the case of *Brookbank* v. *Kennard*, above cited, the complaint charged, that, at the time the said Brookbank

made the alleged fraudulent conveyance to his wife, he
"was owing a large sum of money, which still remains
unpaid." This court, in passing on that allegation, held,
in substance, that it did not appear from it that Brook-
bank, at the time he made the conveyance complained of,
did not have an abundance of other property remaining
to pay all his debts, and that such allegation was, hence,
insufficient to establish the fraudulent character of the
conveyance, as it was intended to do.

In the case of *Pence* v. *Croan,* 51 Ind. 336, it was
decided, that, under our code, a creditor seeking to set
aside a conveyance, on the ground of its being fraudulent,
must allege and show the facts and circumstances neces-
sary to make out the case, in addition to the want of a
valuable consideration, and that the *onus* of alleging and
showing such additional facts and circumstances rests
with the creditor.

After a very careful consideration of the whole subject,
we have come to the conclusion, that, both on principle
and on authority, it is necessary to charge in the com-
plaint, and prove on the trial, that, at the time the con-
veyance complained of was made, the debtor did not have
left enough of other property, subject to execution, to pay
all his debts. In this position we are also, in our opinion,
fully sustained by the cases of *King's Heirs* v. *Thompson,* 9
Pet. 204, and *Warner* v. *Dove,* 33 Md. 579.

We do not think it sufficient to charge, that, some
months or years after the conveyance was executed, no
other property could be found on which to levy an exe-
cution, or, that, at some subsequent time, it was ascertained
that the debtor had become wholly insolvent. To constitute
the conveyance a fraudulent one, it must be made so by
the facts and circumstances connected with it, as they ex-
isted at the time of its execution, and not by any subse-
quent misconduct or misfortune of the grantor. No
matter how bad the intention of a debtor may, in point
of fact, have been in making a voluntary conveyance,

still, if he had sufficient other property remaining, subject to execution, to pay all his debts, his creditors, in legal contemplation, are not injured by this bad intention, simply, and have no right of action to set aside such conveyance.    It is only when an inadequate amount of property remains that creditors have the legal right to complain.

This view of the rights of creditors, as regards voluntary conveyances, results inevitably from the authorities we have cited, and are strictly analogous to the general rules governing the rights of action in civil causes.    It is not for general misconduct, but only for a special injury, that a right of action accrues to the party complaining.

In the case at bar, the appellee does not allege in his complaint whether Mervin Sherman, at the time he caused the land in controversy to be conveyed to his wife, had any other property remaining, subject to execution, or not; nor does he make any other averment of the general pecuniary condition of said Sherman at that time.    This omission is not, we think, in any sense supplied by the allegation that, in July, 1874, more than two years after this conveyance was made, an execution was issued on the appellee's judgment, against the said Sherman's property, and returned "no property found whereon to make levy or sale."

For this reason, we regard the complaint as materially defective, and must hold that the court erred in overruling the demurrers to it.

There were other questions reserved on the trial, but the view we have taken of the complaint renders it unnecessary that we shall consider them now.

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.